# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD ZINTEL, | : | No. 3:09cv2577 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| | : | |
| PROGRESSIVE NORTHERN | : | |
| INSURANCE COMPANY, | : | |
| Defendant | : | |

## MEMORANDUM

Before the court for disposition is Defendant Progressive Northern Insurance Company's motion for summary judgment on Plaintiff Gerald Zintel's claim for bad faith under 42 PA. CONS. STAT. ANN. § 8371. (Doc. 10). The motion has been fully briefed and is ripe for disposition.

## BACKGROUND

This action relates to an injury Plaintiff Gerald Zintel ("Zintel") received when he was run over by an unidentified driver and Zintel's efforts to collect uninsured motorist ("UM") benefits from his insurer, Defendant Progressive Northern Insurance Company ("Progressive"). In the early morning hours of September 21, 2008, Zintel knelt by a parked car to tie his shoelace. (Def.'s Statement Undisputed Material Facts ("DSF") ¶¶ 2, 3 (Doc. 11); Pl.'s Counter-statement Undisputed Material Facts ("PSF") ¶¶ 2, 3 (Doc. 13)). A pickup truck started its engine and ran over Zintel while he tied his shoe. (PSF ¶¶ 3, 4; DSF ¶¶ 3, 4). Zintel had been drinking prior to the accident. (PSF ¶5; DSF ¶ 5). The driver of the pickup truck left the scene and was never identified. (DSF ¶ 6). At the time of the accident, Zintel was unemployed but seeking employment. (DSF ¶ 41; PSF ¶ 41).

Zintel notified Progressive of the accident on September 25, 2008. (DSF ¶ 7). The next day, Zintel gave Progressive a recorded statement regarding the accident and Progressive opened a UM claim. (Id. ¶¶ 8, 9). Zintel's recorded statement described his injuries as a compression

fracture and a right MCL/ACL meniscus tear. (Id. ¶ 10). Zintel's treating physician identified the compression fracture as an aggravation of a prior compression fracture. (Id. ¶ 42). Zintel wore a back brace and underwent physical therapy, but did not have surgery. (Id. ¶¶ 43, 44). Future treatment, including surgery, may be necessary according to Zintel. (PSF ¶¶ 43, 44). Similarly, Zintel wore a brace and underwent physical therapy for his knee injury. (DSF ¶ 46). Zintel is generally able to take care of himself and perform activities as he did before the accident, but has some pain. (DSF ¶¶ 47, 48; PSF ¶ 48).

On October 3, 2008, Zintel advised Progressive that he had retained an attorney. (DSF ¶ 11). On October 9, 2008, Progressive referred Zintel's claim to its Special Investigations Unit to investigate the loss in light of the phantom vehicle, but that unit was unable to identify the driver. (Id. ¶¶ 12, 17). On October 27, 2008, Zintel's counsel put Progressive on notice of a UM claim relating to the accident. (Id. ¶ 13). Progressive, in turn, forwarded authorization forms to be executed by Zintel and requested that Zintel's counsel provide any medical and wage information on November 4, 2008. (Id. ¶ 14).

On November 7, 2008, Zintel's counsel informed Progressive that she was in the process of collecting information on Zintel's claim and that she would forward the information upon receipt. (DSF ¶ 15). Counsel also gave Progressive permission to obtain a copy of Zintel's personal injury protection ("PIP") file. (Id. ¶ 16). On November 14, 2008, Zintel's counsel indicated that Zintel's injuries exceeded the UM policy limits and that Progressive would agree when it was provided with documentation. (Id. ¶ 18). Zintel denies that further documentation would have been necessary to agree with counsel's assessment and that Progressive had access to Zintel's first-party file. (PSF ¶ 18).

2

As of March 19, 2009, Progressive had not been forwarded documentation on Zintel's claim and had only a copy of Zintel's PIP file which included the medical records relating to Zintel's initial hospital stay. (DSF ¶¶ 19 - 21). Progressive contacted Zintel's counsel on that day, requesting medical and wage authorizations to order Zintel's medical records. (Id. ¶ 22). Zintel disputes whether further documentation would have been necessary to evaluate his claim. (PSF ¶¶ 19 - 22).

Progressive reiterated its request on June 1, 2009. (DSF ¶ 23). Zintel's counsel refused to provide Progressive with the authorizations. (Id. ¶ 25). After another request, on June 5, 2009 Zintel's counsel forwarded medical records consisting of Zintel's physical therapy between October and December 2008. (Id. ¶¶ 26 - 28). Zintel disputes whether further documentation would have been necessary to evaluate his claim. (PSF ¶¶ 23 - 28)). On June 5, 2009, Zintel demanded the policy limits of $100,000.00. (DSF ¶ 29).

As of July 9, 2009, Progressive had Zintel's medical records from his initial hospital stay and his physical therapy between October and December 2008. (DSF ¶ 30). Progressive requested Zintel's complete medical records and requested further information. (Id. ¶¶ 31, 32). On July 30, 2009, Zintel's counsel provided more information and additional medical records and lien information. (Id. ¶¶ 33, 34). Zintel disputes whether further documentation would have been necessary to evaluate his claim. (PSF ¶¶ 33 - 34).

On August 19, 2009, Progressive offered Zintel $28,300.00 to resolve his UM claim. (DSF ¶ 35). On August 27, 2009, Progressive sought additional medical records and sent authorization forms. (Id. ¶ 36). On September 21, 2009, Progressive sent a letter to Zintel's counsel asking for a response to Progressive's offer. (Id. ¶ 38).

3

On October 29, 2009, Zintel had surgery on his knee related to the accident. (DSF ¶ 45). Zintel has out-of-pocket expenses relating to medical bills and physical therapy totaling $2,600.00 and a Department of Public Welfare lien totalling approximately $4,200.00. (Id. ¶¶ 49, 50).

On Novemer 19, 2009, Zintel filed the instant action in the Court of Common Pleas of Wayne County for UM benefits and bad faith under Pennsylvania's Bad Faith statute, 42 PA. CON. STAT. ANN. § 8371. (DSF ¶ 39; Compl. (Doc. 1-3)). Progressive removed the action to this court on December 31, 2009. (Notice of Removal (Doc. 1)). Progressive answered the complaint on January 7, 2010. (Doc. 2). After engaging in discovery, Progressive filed a motion for summary judgment on Zintel's claim for bad faith, bringing the case to its present posture. (Doc. 10).

**JURISDICTION**

Zintel is a citizen of Pennsylvania and Progressive is a Wisconsin corporation with a principal place of business in Ohio, establishing diversity of citizenship between the parties. (Notice of Removal ¶¶ 4, 5). The amount in controversy exceeds $75,000.00. (Id. ¶¶ 6 - 8). Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, the court has removal jurisdiction over the case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"); 28 U.S.C. § 1441 (A defendant can generally remove a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute).

As a federal court sitting in diversity, we must apply state law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie

4

R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).  In this case, the relevant state is Pennsylvania.  If the state supreme court has not yet addressed an issue before us, we must predict how that court would rule if presented with that issue.  Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).  In so doing, we must examine the opinions of the lower state courts, and we cannot disregard them unless we are convinced by other persuasive data that the highest court would rule otherwise.  Id.

**LEGAL STANDARD**

Before the court is the defendant's motion for summary judgment.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden

by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

Progressive moves for summary judgment on Zintel's claim for bad faith. Pennsylvania's insurance bad faith statute, 42 PA. CONS. STAT. ANN. § 8371, authorizes recovery for an insurance company's bad faith towards an insured. It provides for several remedies upon a finding of bad faith: (1) an award of "interest on the amount of the claim" at a rate equal to "the prime rate of interest plus 3%"; (2) an award of "punitive damages against the insurer"; and/or (3) an assessment of "court costs and attorney fees against the insurer." Id.

The Court of Appeals for the Third Circuit has adopted the legal standard established by the Pennsylvania Superior Court for testing the sufficiency of bad faith claims under section 8371, "both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Thus, "[i]n a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Bostick v.

6

ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (citing Jung v. Nationwide Mutual Fire Insurance Co., 949 F. Supp. 353 (E.D. Pa. 1997); Leo v. State Farm Mutual Automobile Insurance Co., 939 F. Supp. 1186, 1192-1193 (E.D. Pa. 1996)).

While this test represents the general criteria, "[i]t is now clear . . . that section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices." Sawyer v. Fireman's Fund Ins. Co., No. 3:03-cv-0233, 2006 WL 167814, at *8 (M.D. Pa. Jan. 20, 2006) (citing O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999). The Third Circuit has recognized that bad faith conduct extends to "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999).

To summarize Zintel's bad faith claim, he alleges that (1) Progressive improperly reduced its settlement offer based on a comparison of Zintel and the unidentified pickup driver's levels of fault; (2) Progressive ignored Zintel's right knee meniscus tear in calculating its settlement offer; (3) Progressive failed to account for Zintel's expected right knee surgery; (4) Progressive presented its settlement offer as a total settlement offer without including all damages and (5) Progressive did not offer a partial payment of uncontested UM amounts. We will address only Zintel's first argument.

Zintel cites Carter v. Nat'l R.R. Passenger Corp., 413 F. Supp. 2d 495, 501 (E.D. Pa. 2005) for the proposition that, where a defendant is found to have acted with reckless disregard of safety, a plaintiff's own contributory negligence is not a defense. (citing Krivjanski v. Union R.R. Co., 515 A.2d 933, 936 (Pa. Super. Ct. 1986) (holding that "when willful or

wanton misconduct is involved, comparative negligence should not be applied.").[1]  Zintel points out that Progressive's claims specialist, Karen Castelli admits comparing the relative levels of fault of Zintel and the unidentified driver, assigning the majority of liability to the unidentified driver. (Castelli Dep. at 25 - 29 (Doc. 13-3)).  Castelli also opined that the unidentified driver was reckless.  (Id.)  Finally, Castelli admits that this comparison of fault was factored into her claim evaluation to reduce the amount Zintel would be offered to resolve his UM claim.  (Id.)

     The terms "recklessness" and "negligence" have legal significance and describe standards of conduct which must be determined by a jury.  Thus, the opinion of a claim evaluator as to an individual's conduct is not determinative as to that conduct's legal significance.  However, on summary judgment, we view the evidence in the light most favorable to Zintel.  Here, taking Castelli's statements regarding the recklessness of the phantom driver and her comparative fault analysis, we will assume (1) that Progressive believed that the phantom driver was, in fact, reckless and (2) that Progressive knew that, under the law, Zintel's negligence was immaterial.  Assuming these facts, for purposes of addressing Progressive's motion for summary judgment, a reasonable jury could conclude that Progressive knew it did not have a reasonable basis to reduce its claim evaluation but reduced the evaluation anyway.  For this reason, Progressive's motion for summary judgment will be denied.

---

     [1] The court in Krivjanski seemed equate the concept of reckless disregard of safety with wanton or willful misconduct, except to the extent that this second term involved "conduct intended to cause harm to another."  515 A.2d at 937 (quoting RESTATEMENT (SECOND) OF TORTS § 500 special note).  Thus, Progressive's attempt to distinguish Krivjanksi and Carter based on this difference in terminology is without merit.

**CONCLUSION**

Because we find that there is a genuine issue of material fact as to whether (1) Progressive lacked a reasonable basis for denying benefits and (2) Progressive knew or recklessly disregarded its lack of reasonable basis, Progressive's motion for summary judgment on Zintel's bad faith claim will be denied. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD ZINTEL,
        **Plaintiff**

  v.

PROGRESSIVE NORTHERN
INSURANCE COMPANY,
        **Defendant**

No. 3:09cv2577

(Judge Munley)

## ORDER

**AND NOW**, to wit, this  16th  day of December 2010, upon consideration of Defendant Progressive Northern Insurance Company's motion for summary judgment on Plaintiff Gerald Zintel's claim for bad faith under 42 PA. CONS. STAT. ANN. § 8371 (Doc. 10), it is HEREBY **ORDERED** that the motion is **DENIED**.

                                  **BY THE COURT:**

                                    s/ James M. Munley
                                  **JUDGE JAMES M. MUNLEY**
                                  **United States District Court**